UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN LAMONT JENKINS,

        Petitioner,

v.

        Case No.: 16-cr-20229
        19-cv-10227
        Hon. Gershwin A. Drain

UNITED STATES OF AMERICA,

        Respondent.
_____/

## **OPINION AND ORDER DENYING PETITIONER'S 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE [#100] AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

### I. INTRODUCTION

On January 22, 2019, Petitioner Marvin Lamont Jenkins filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Petitioner argues that his trial counsel provided ineffective assistance of counsel because he (1) failed to properly advise Petitioner about his decision to plead guilty, (2) failed to seek a more advantageous plea offer, (3) failed to discuss and explain the presentence investigation report (PSR) prior to sentencing, (4) failed to file substantive objections to the PSR, (5) failed to argue that Petitioner had a minor

role and was entitled to a sentence reduction and (6) failed to consult with him concerning an appeal.

On April 8, 2019, the Government filed its Response in Opposition arguing that Petitioner's claims are conclusory and lack factual details, as well as belied by the record in this matter. Petitioner filed a Reply brief in support of his § 2255 motion on May 28, 2019. For the reasons that follow, the Court will deny Petitioner's 28 U.S.C. § 2255 petition.

## II. FACTUAL BACKGROUND

On March 31, 2016, a grand jury returned a three count indictment against Petitioner charging him with conspiracy to possess with intent to distribute and to distribute cocaine; possession with intent to distribute cocaine; and possession of a firearm in furtherance of a drug trafficking crime.

On June 13, 2017, Petitioner appeared for a final pretrial conference, which was also the plea cutoff date. At the hearing, the Government indicated that Petitioner could plead guilty to possession with intent to distribute cocaine and the firearm offense, counts II and III, and the government would dismiss the conspiracy charge, count I. The Government further noted that the plea offer would have required Petitioner to serve a mandatory minimum of 15 years imprisonment and his projected guideline range was 180 to 195 months. Petitioner

rejected this offer after discussing it with his attorney. ECF. No. 107 at PgID 794-96.

On July 18, 2017, the morning of trial, Petitioner accepted an amended offer that allowed him to plead guilty to possession with intent to distribute cocaine only, with a guideline range of 135 to 158 months and an agreed-upon sentence of 156 months imprisonment. The Court indicated on the record that the plea agreement was pursuant to Fed. R. Crim. P. 11(c)(1)(C), thus the Court would be bound to the sentence the parties agreed upon. ECF. No. 108 at PgID 811-13, 819. Petitioner acknowledged his understanding that his sentence would be thirteen years in prison. *Id*. at 819.

Counsel filed a timely objection to the PSR related to Petitioner's education level. On December 14, 2017, the Court sentenced Petitioner to 156 months imprisonment. Petitioner's judgment was entered on January 1, 2018. Petitioner did not file a notice of appeal.

The facts giving rise to this action began in early March of 2016 when the Detroit office of the Drug Enforcement Administration (DEA) was alerted that Petitioner's co-defendant, Jorge Duarte, was en-route via an Amtrak train to Detroit to conduct a large-scale narcotics transaction. On March 5, 2016, Duarte arrived at the Amtrak station where he was picked up by Petitioner, who was

driving a Ford F-150 pick-up truck that he had rented. Petitioner drove with Duarte to a hotel in Southfield, paid cash to rent a room at a hotel, where he dropped Duarte off.

On March 6, 2016, agents observed Petitioner on two separate occasions carrying luggage into the hotel room occupied by Duarte. On the first occasion, Petitioner took in a small black duffle bag with grey accents. On the second occasion, Petitioner struggled with the weight of the luggage, wheeling in a large duffle bag. Pursuant to a search warrant, those pieces of luggage were later located in the hotel room rented by Petitioner. The luggage contained a heat sealer, money counter, and $820,113.00 in United States currency.

After delivering the large duffle bag to the hotel room, Petitioner and Duarte traveled to a gas station in Dexter, Michigan where they briefly met with occupants of a semi-truck to obtain the cocaine. Immediately following the meeting, Petitioner dropped Duarte off at the hotel. After Petitioner left the hotel, a Southfield police officer, working under the supervision of DEA agents, conducted a traffic stop. A canine, trained to detect the odor of narcotics, positively indicated to the presence of drugs inside Petitioner's rental vehicle. During a search of the vehicle, officers found 24 kilograms of cocaine in the back seat in a large duffle

bag. Additionally, Petitioner had a loaded firearm, which he turned over to law enforcement, along with his concealed pistol license (CPL) paperwork.

Following his arrest, Petitioner gave a post *Miranda* statement to law enforcement officers. He admitted in detail his role in the conspiracy dating back to December 2015. Petitioner admitted to acting as an intermediary, facilitating large-scale drug transactions between a Mexican source of supply and an identified metro Detroit based customer. Petitioner admitted that in addition to the 24 kilograms of cocaine he was arrested with, he facilitated two other 24 kilogram quantity transactions between the parties. The first sale of 24 kilograms of cocaine occurred in December 2015, for which the Petitioner negotiated a price of $34,000 per kilogram of cocaine. In February 2016, when the second shipment of 24 kilograms of cocaine was sent, the negotiated price decreased to $32,000 per kilogram.

During each transaction, Petitioner would rent a hotel room for Duarte, where he would drop him off after his arrival in Detroit. Petitioner would receive cash from the buyer and deliver it to the hotel room for Duarte to count. Petitioner would meet with the truck driver to receive the cocaine, which he would then deliver to the Detroit based distributor. For his role in the conspiracy, Petitioner indicated he was paid $500 per kilogram. In total, Petitioner admitted to conspiring to distribute, and personally transporting at least 72 kilograms of cocaine, handling

more than 2 million dollars in U.S. currency, and personally profiting at least $36,000 for his role.

## III. LAW & ANALYSIS

### A. Title 28 U.S.C. § 2255

In order to obtain relief pursuant to 28 U.S.C. § 2255, Petitioner must allege: (1) an error of constitutional magnitude, (2) a sentence was imposed outside the federal statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire criminal proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). The Court may summarily deny § 2255 relief "without conducting an evidentiary hearing [where] 'the motion and the files and records of the case conclusively show that [the petitioner] is entitled to no relief.'" *Cole v. United States*, No. 17-6061, 2018 U.S. App. LEXIS 28034, *5 (6th Cir. Mar. 30, 2018).

### B. Ineffective Assistance of Counsel

In order to succeed on his ineffective assistance of counsel claims, Petitioner must show that (1) his attorney's performance was deficient, meaning the attorney committed errors so serious his performance "fell below an objective standard of reasonableness" and (2) "that [Petitioner] suffered prejudice" as a result of the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

Failure to satisfy either prong is fatal. *Id.* Scrutiny of counsel's performance is "highly deferential," and counsel is "strongly presumed to have rendered adequate assistance. *Id.* at 690.

### 1. Ineffective Assistance Relative to the Plea Agreement

An attorney has an obligation to convey to their client any plea offer, review the charges by explaining the elements the government must prove to secure conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising either option – trial or guilty plea. *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003).

Here, Petitioner does not assert that his attorney failed to relay any offer from the Government, or that he failed to review the elements of the offenses and related evidence, or Petitioner's sentencing exposure. Moreover, Petitioner's claim that his attorney failed to communicate with him is directly contradicted by his statements given under oath at the plea hearing.

> THE COURT: And are you satisfied with the advice and counsel you've received from Mr. [Mitchell] Nelson up to this point?
> 
> THE DEFENDANT: Yes.
> 
>       \*    \*    \*

> THE COURT: Did you have a chance to read [the Rule 11 Plea Agreement] over?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And did you have any questions you had about the agreement answered for you by Mr. Nelson?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. All right. And so, does this agreement represent the entirety of your understanding of what the agreement is that you have with the government?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you have any questions at all about the agreement?
>
> THE DEFENDANT: No.
>
> \*      \*      \*
>
> THE COURT: And as I understand it, the sentence that will be imposed at the time of the sentence is a sentence of 13 years in prison; do you understand that?
>
> THE DEFENDANT: Yes.

ECF. No. 108 at PgID 818-20. Petitioner cannot create a factual dispute by contradicting his sworn testimony without explaining why his earlier testimony was wrong. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999) (recognizing that the federal circuits have consistently and unanimously held that a party cannot create a fact dispute by contradicting previous sworn testimony without "explaining the contradiction or attempting to resolve the disparity.").

In any event, Petitioner cannot show prejudice by pleading guilty. To show he was prejudiced by entering a guilty plea, Petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, Petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). While Petitioner makes a conclusory statement that he might have proceeded to trial, his main grievance is that his attorney did not negotiate a better plea relative to his co-defendant Jorge Duarte. Yet, criminal defendants have no constitutional right to a plea bargain. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Petitioner was not entitled to a plea bargain, nor can he demonstrate counsel was ineffective for not requesting a plea agreement that contained the same terms as Duarte's agreement. Petitioner's comparison to Duarte is misplaced because Duarte was not a leader or organizer and he did not possess a firearm as Petitioner did. Thus, Duarte was safety valve eligible and not subject to the mandatory minimum sentence under the Controlled Substances Act. 18 U.S.C. § 3553(f), U.S.S.G. § 5C1.2.

The record supports the conclusion that Petitioner's decision to plead guilty was motivated by the Government's decision to dismiss the firearm charge, which the Petitioner asserted he possessed for his personal protection before he was involved in drug trafficking. Petitioner's counsel informed the Court at sentencing

that "[t]his matter boiled down to basically the question of the gun . . .[w]e went up to the day of trial before we were able to get an agreement from the prosecutor to dismiss the gun addition." ECF No. 109 at PgID 835-36. By pleading guilty to the Rule 11 plea agreement, Petitioner reduced his sentencing exposure from at least a fifteen year mandatory minimum to life term of imprisonment to a thirteen year sentence. Because Petitioner cannot show deficient performance or resulting prejudice, his ineffective assistance of counsel claims related to the plea negotiation process are without merit.

### 2. Ineffective Assistance Relative to Sentencing

Petitioner also argues that counsel was ineffective at sentencing because he allegedly failed to properly discuss and explain the PSR and failed to file any substantive objections to the PSR.

Petitioner's assertion that he did not understand the guidelines is suspect because Petitioner is a high school graduate with some college credits. At the time he entered the Rule 11 plea agreement, Petitioner acknowledged that he understood his sentence would be 156 months imprisonment. ECF No. 108 at PgID 818-20. The PSR calculated the guidelines consistent with the parties' Rule 11 plea agreement. At sentencing, Petitioner raised his sole objection to the PSR, which concerned verification related to his education level.

Petitioner also argues for the first time that he should have been scored for a mitigating role. However, Petitioner did not qualify for a mitigating role. *See* Application Note 3(C), U.S.S.G. § 3B1.2. Petitioner admitted he had a relationship with the source of supply in Mexico and acted as an intermediary between the source and a metro Detroit customer. Petitioner facilitated three separate 24 kilogram shipments of cocaine for the parties. He negotiated the price per kilogram of cocaine with the source and received $500 profit per kilogram. Petitioner rented the hotel room for Duarte who came to Detroit to count the money Petitioner collected from the drug customer. Petitioner met a truck driver to retrieve and deliver the cocaine to the customer. Petitioner's admitted role was not as a minor participant. Thus, counsel cannot have performed deficiently for not seeking a sentence reduction that Petitioner did not qualify for.

Moreover, Petitioner cannot show his attorney would have been successful if he had filed objections to the PSR and argued for a minor role or a sentence reduction. At his plea hearing, Petitioner informed the Court that he read the plea agreement that he signed, which stated there were no sentencing guideline disputes and that neither party could take a position different than what was reflected in the worksheets. ECF No. 108 at PgID 818; ECF. No. 89 at PgID 692-93; Ex. 1:Guidelines Worksheets.

Because Petitioner cannot show deficient performance or prejudice with respect to the sentencing phase, he is also not entitled to the writ of habeas corpus based on his sentencing related arguments.

### 3. Ineffective Assistance Relative to Filing Notice of Appeal

Petitioner also asserts that counsel was ineffective for failing to inform Petitioner that he could file an appeal. Counsel "has a constitutionally-imposed duty to consult with the defendant about an appeal where there is reason to think either (1) that a rational defendant would appeal (e.g. because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). To determine whether these circumstances are present in this case, courts must consider all relevant factors such as whether the defendant pleaded guilty and whether the defendant received a much longer sentence than anticipated. *Id.* at 480.

If either of these circumstances is present, prejudice is established upon a defendant's showing "that but for counsel's deficient conduct, he would have appealed." *Id.* at 486. Relevant to this inquiry is whether nonfrivolous grounds for appeal exist or whether the defendant promptly informed counsel of his desire to appeal. *Id.* at 485.

In its Response brief, the Government included the "Declaration of Trial Counsel, Mitchell H. Nelson. ECF No. 111-3 at PgID 921. Mr. Nelson indicates that during his representation of Petitioner, he discussed Petitioner's "appellate rights on several occasions both before entry of his Rule 11 plea of guilty and afterwards." *Id*. at PgID 922. Mr. Nelson further declares that he "answered all the questions" raised by Petitioner and that Petitioner "indicated he understood the issues involved." *Id.* Lastly, Mr. Nelson states that Petitioner "never requested that I file an appeal on this matter." *Id.*

In Petitioner's reply brief, he fails to address Mr. Nelson's Declaration altogether. Rather, Petitioner argues that "[t]his is another example of the lack of communication between Nelson and Jenkins. It was Nelson's duty to ascertain Jenkins' wishes with regard to filing an appeal." ECF No. 115 at PgID 937.

Petitioner's failure to file an affidavit, coupled with the "bald assertions and conclusory allegations" in his pleading demonstrate an evidentiary hearing is not required. *Thomas v. United States*, 849 F.3d 669, 680-81 (6th Cir. 2017); *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (evidentiary hearings are only required when a petitioner's assertions, supported by an affidavit, create a relevant factual dispute).

Petitioner has failed to advance any facts to suggest that either *Flores-Ortega* circumstance is present here. He does not provide specific facts supporting that he either indicated an interest in filing an appeal or that Mr. Nelson should have deduced that there were non-frivolous grounds for appeal. A review of the record in this case confirms that Nelson's duty to consult with Petitioner did not arise in this case. Petitioner's guilty plea reduced his sentence exposure from a potential sentence of a mandatory minimum of 15 years to life imprisonment to a 13 year term of imprisonment. Petitioner agreed in his Rule 11 that he was waiving his right to appeal all claims except for ineffective assistance of counsel. At sentencing, Nelson informed the Court that "[t]his matter boiled down to basically the question of the gun . . . [w]e went up to the day of trial before we were able to get an agreement from the prosecutor to dismiss the gun addition." ECF No. 109 at PgID 835-36. Petitioner received the benefit of his bargain.

It would be reasonable for an attorney in Nelson's position to believe his client entered a guilty plea in order to end the judicial proceedings. *Flores-Ortega*, 528 U.S. at 480; *Richards v. United States*, 301 F. App'x 454, 458 (6th Cir. 2008). No reasonable attorney can be expected to assume his client rationally might want to appeal a sentence that he had agreed to in a Rule 11 and where he had waived the majority of his appellate rights. Additionally, counsel cannot be faulted for

failing to deduce the claims Petitioner has brought in his § 2255 motion because these claims are without merit as discussed *supra*. *See Hopkins v. United States*, No. 17-1599, 2017 U.S. App. LEXIS 27978 (6th Cir. Nov. 27, 2017) ("[A] rational defendant would not have wanted to appeal the enhancement because the appeal would have been frivolous for the reasons discussed above."). Accordingly, Petitioner is likewise not entitled to habeas relief based on this argument.

### C. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2255 Proceedings, which was amended as of December 1, 2009, requires that a district court issue or deny a certificate of appealability when it enters a final order. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c) (2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c) (3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

The Supreme Court has provided that, to demonstrate entitlement to a certificate of appealability pursuant to § 2255, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a § 2255 motion is denied on procedural grounds without reaching the underlying merits, a certificate of appealability should issue if the movant shows that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-858.

Here, the Court concludes that reasonable jurists would not find it debatable whether Petitioner's ineffective assistance of counsel claim should have been decided in a manner different than that reached by this Court. Therefore, the Court declines to issue a certificate of appealability.

## IV. CONCLUSION

For the reasons articulated above, Petitioner's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence [#100] is DENIED. The Court declines to issue a Certificate of Appealability.

SO ORDERED.

Dated: July 15, 2019

                                        s/Gershwin A. Drain
                                        HON. GERSHWIN A. DRAIN
                                        United States District Court Judge

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 15, 2019, by electronic and/or ordinary mail.

                                        s/Teresa McGovern
                                        Case Manager